# CHUN YIN KOK *v.* WOO SEE WO.

## No. 1753.

Submitted August 19, 1927.          Decided September 3, 1927.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is an action for summary possession, begun

January 26, 1924, in the district court of Honolulu. Plaintiff's amended declaration alleged in effect, among other things, that on or about December 1, 1923, plaintiff let by parol to defendant as tenant at will a certain store building, numbers 1018 and 1020 Aala street, in Honolulu, at an agreed monthly rental of $500, payable monthly in advance; that the defendant had failed and refused to pay the rent due January 1, 1924, although demand had been made therefor, and that the defendant had refused to quit said premises after he had received written notice on January 2 and January 15, 1924, to quit the same. Plaintiff prayed judgment determining said tenancy, restoring possession of said premises and awarding plaintiff damages in the sum of $500 for rents and mesne profits for withholding possession of said premises as aforesaid, and for attorney's commissions and costs.

After a hearing in the district court judgment was therein entered in favor of the plaintiff, from which judgment an appeal was taken to the first circuit court where the case was tried *de novo* before a jury, Judge Andrade presiding, and a verdict was returned in favor of the plaintiff in the sum of $125. Possession had already been restored to plaintiff, the premises having been vacated by the defendant on February 1, 1924. Plaintiff moved that the verdict be set aside and that a new trial be granted upon two grounds, viz: 1. "That it was error on the part of the jury to hold that the sum of $125 and not $500 was due the plaintiff from the defendant for the rent of the demised premises for the month of January, 1924." 2. "That the verdict of said jury in said cause was and is contrary to the law and the evidence in and of said cause."

The motion was granted upon both grounds by written decision and order to which defendant's attorney noted an exception. Thereafter there was a new trial of said

cause in the third division of the first circuit court, Judge Massee presiding, before a jury which returned a verdict in favor of the plaintiff in the sum of $500. To this last named verdict defendant noted an exception on the ground that the same was contrary to the law, the evidence and the weight of the evidence, and thereafter filed a motion for a new trial based essentially upon the same grounds and a motion for judgment *non obstante veredicto*. The motion for judgment *non obstante veredicto* was to the effect that judgment be entered in favor of the plaintiff and against the defendant in the sum of $125. The motion for a new trial and the motion for judgment *non obstante veredicto* were overruled by the court and exceptions to said ruling were entered by the defendant. Judgment was thereupon entered in favor of the plaintiff and against the defendant in the sum of $500 with interest and costs, to which judgment exception was duly noted and allowed.

As above appears, the exceptions, five in number, are: (1) to the decision and order signed and entered by Judge Andrade on plaintiff's motion for new trial; (2) to the verdict at the new trial, Judge Massee presiding, in favor of plaintiff and against defendant, for $500; (3) to the decision overruling defendant's motion for new trial; (4) to the decision overruling defendant's motion for judgment *non obstante veredicto;* and (5) to the judgment in favor of plaintiff and against defendant for $500 with interest and costs.

Exception Number 5 is not set forth in plaintiff's specification of exceptions relied upon, and it has not been presented or argued to this court. It may therefore be treated as abandoned.

1. Judge Andrade's decision and order setting aside, upon plaintiff's motion, the verdict for $125 in his favor and ordering a new trial in said cause, dated April 21, 1925, was excepted to the following day by defendant's

counsel, but no bill of exceptions embracing the same is shown to have been presented to Judge Andrade for allowance within ten days thereafter or at all, and no reason is shown for the defendant's failure to settle said exception or a bill containing the same before the judge to whose ruling said exception was noted. After the verdict for $500 in plaintiff's favor in the second trial, and after the defendant's motion for a new trial and his motion for judgment *non obstante veredicto* had been denied, the defendant's exceptions, including the one in this paragraph referred to and the four others in the last preceding paragraph above named, were presented in the form of a bill of exceptions to Judge Massee, who settled, allowed and approved the same by order dated February 9, 1927. In the circumstances above recited the presentation of Exception 1 to Judge Massee and the allowance of the same by him were not sufficient to entitle the defendant to a review by this court of the matters therein set forth.

In *Booth* v. *Schnack*, 19 Haw. 659, referring to section 1864 R. L. 1905 (which with a later amendment is now section 2515, R. L. 1925), this court said: "It seems to us to be too clear to require argument that the judge contemplated by the statute, to whom the presentation of a bill of exceptions is to be made, is the one who presided at the trial and not any of his associates."

Exceptions to the foregoing rule are set forth in section 2254, R. L. 1925 (formerly section 1654 R. L. 1905), as follows: "Exceptions and decrees, when settled by another judge. In all cases in which a circuit judge who has presided at the trial of a case in which a verdict has been rendered, or who has tried or heard a case or matter and announced his decision therein, shall die or cease to be a judge by resignation, removal or otherwise, or absent himself from the Territory or because disabled by reason of illness or other cause, with-

out having signed a decree therein, or without having allowed or signed exceptions to which a party is entitled or claims to be entitled, the successor in office, if any, of such judge, or any other judge of the same circuit, shall, upon the agreement of the parties or upon satisfactory proof of the correctness of the proposed form of decree or statement of exceptions, settle and sign such decree and pass upon, and, if found correct, allow and sign such exceptions."

The facts in the case at bar do not bring it within any of the above quoted exceptions of section 2254, which alone excuse presentation to the presiding judge. Furthermore, by failing to take a timely bill of exceptions or writ of error to this court from the order granting plaintiff's motion for a new trial and by participating in the second trial defendant waived any error, if error there was, in the granting of the new trial. See *Ewing* v. *Lunn,* 22 S. Dak. 95, 115 N. W. 527. The foregoing statement involves a consideration of the nature of an order granting a motion for a new trial. This question is discussed at length in *Territory* v. *Cotton Bros.,* 17 Haw. 374, decided in 1906. Quoting from pages 377 et seq: "Some courts hold that a ruling on a motion for a new trial, whether granting or refusing a new trial, is discretionary with the trial judge and cannot be reviewed by the appellate court on appeal, error or exceptions, whether before or after a new trial has been had, if one has been ordered, unless at least the ruling was based on matters occurring or discovered after the first trial and in regard to which therefore no exceptions could have been taken before verdict or judgment. Other courts, while holding that such a ruling is not so far discretionary as to preclude review within certain limits, hold nevertheless that it is interlocutory and cannot be reviewed before a new trial has been had, if one has been ordered, and, indeed, cannot ordinarily be made the direct

subject of appeal, error or exceptions, but can be reviewed only upon a review of the final judgment in the case. * * * It is contended by the defendants that in this jurisdiction an order granting a new trial, whatever may be the rule with respect to an order refusing a new trial (see *Harrison* v. *Magoon,* 16 Haw. 170, 332), is interlocutory, and, on the analogy of decisions in cases brought up on exceptions to other interlocutory rulings, cannot be reviewed on error before final judgment in the case. The interlocutory rulings referred to, which it has been held cannot be reviewed on exceptions before final judgment, were orders overruling demurrers, pleas of former conviction and the like. See *Barthrop* v. *Kona Coffee Co.,* 10 Haw. 398, and cases there cited; also *Territory* v. *Ah Quong,* 14 Haw. 108. It has not been held that an order granting a new trial cannot be brought up immediately on exceptions, although in *Ahmi* v. *Cornwell,* 14 Haw. 301, where such a contention was made on the ground that the order was interlocutory, the court based its opinion, that the exception could be entertained, upon the ground, not that the order granting a new trial was not interlocutory or that if it was it could be reviewed immediately, but that the exceptions had been certified up by the trial court under an express statutory provision permitting it in its discretion to certify exceptions to interlocutory rulings. In other cases, however, in which objection was made to entertaining exceptions to orders refusing new trials, based on the ground that such orders were discretionary, the court has expressly stated that, whatever might be the rule elsewhere, in this jurisdiction an order either denying or granting a motion for a new trial may be brought up on exceptions. See *George* v. *Holt,* 9 Haw. 135; *Republic* v. *Hapa,* 9 Haw. 622. (See also *Ah Chu* v. *Sung Kwong Wo Co.,* 5 Haw. 291.) It is true that in these cases the court did not expressly say when the order or ruling might be

brought up, that is, whether before or after final judgment, but there can be no doubt that it meant immediately; it of course meant that a ruling on a motion for a new trial could be made the direct and independent subject of a bill of exceptions; not merely that it could be considered on a review of the final judgment itself. These decisions were made about the same time as most of the decisions above referred to which held that other interlocutory rulings could not be brought up immediately on exceptions and the second of these decisions was made after most of those cases were decided. The statement made in some of those cases, to the effect that the fact that exceptions to such other interlocutory rulings had been entertained in some cases did not establish the right to bring such exceptions immediately, because the practice had generally been the other way and because when such exceptions had been entertained it was by consent or because the point was not noticed, does not apply to rulings on motions for new trials; for, as stated in *George* v. *Holt,* the practice had been different in respect to exceptions to such rulings. Instances of entertaining exceptions to orders granting new trials may be found in the same volume of the reports. See *Kaanaana* v. *Keahi,* 9 Haw. 318; *Macfarlane* v. *Lowell,* 9 Haw. 438. Of course in such cases where the ruling of the trial judge is not on a pure question of law considerable weight is given to his opinion, particularly if he grants a new trial. The rule of the court, which, as often stated in the decisions, was based on the statute in regard to motions for new trials, also shows unmistakably that it was regarded as correct practice to bring an order granting or refusing a new trial directly to this court on exceptions. * * * In view of the foregoing we prefer not to pass upon the question whether an order granting a new trial may or may not be brought to this court immediately on exceptions."

In 1915 the case of *Martin* v. *Wilson,* reported in 23 Haw. page ·74, came to this court upon a bill of exceptions of the defendant allowed by the circuit judge as an interlocutory bill, one of the exceptions being to the granting of plaintiff's motion for a new trial. Quoting from the opinion (p. 75) : "The jury having returned a verdict for the defendant, the last exception is the only one which demands the attention of this court and as, under the practice of this jurisdiction an order granting a new trial is, for the purpose of an exception, a final order, the allowance by the circuit judge was not required."

2. Exceptions 2, 3 and 4 as set forth in defendant's brief "are all based upon the question of whether or not there was· sufficient evidence to warrant the verdict in the second trial." Evidence was admitted in the second trial tending to show, among other things, that on November 27, 1923, L. Ah Leong executed to Chun Yin Kok, the plaintiff herein, a lease of premises including the certain store building numbered 1018 and 1020 on Aala street, Honolulu, Oahu, for a term of five years beginning December 1, 1923. At the time of the execution of said lease, and for about nine years prior thereto, a part of the building described had been occupied by Woo See Wo as tenant of Ah Leong at a rental which began at $45 per month and increased during the tenancy to $175 per month, the rental later being reduced to $125 per month in consideration of certain repairs made by defendant in compliance with certain sanitary requirements of the board of health. Defendant described himself (Trans. p. 16) as the "monthly tenant" of Ah Leong. Under date of November 27, 1923, two written notices were sent to the defendant, one from Ah Leong and the other from Chun Yin Kok. The paper from Ah Leong notified defendant of the execution of the above named lease to Chun Yin Kok and of the further fact that from and after December 1, 1923, Chun Yin Kok would be

"entitled to receive and collect all rents derived from said building." The writing from Chun Yin Kok notified the defendant that from and after January 1, 1924, the rental of the portion of said building occupied by defendant would be $500 per month, payable in advance on the 1st day of each month.

There is no evidence that any objection was made by defendant to the last above named increase in rental until January 2, 1924. On or about December 3, 1923, defendant attorned to plaintiff by sending him a check for $125 in payment of his December rent. On January 2, 1924, plaintiff sent defendant a notice to quit said premises on or before January 15, 1924, "unless payment of the rent of $500 due on the 1st of January, 1924, is tendered." The notice last above referred to was served on the defendant by Charles Awana, a portion of whose testimony on cross examination is set forth on pages 14 and 15 of the transcript as follows: "Q. You saw the defendant again on January 22, 1924?" (Evidently a typographical error, the transcript showing later that January 2 was intended.) "A. I did. Q. And at that time did he tell you that he claimed under the Ah Leong agreement at a rental of $125 a month. A. He said when I went down and serviced the notice and asked for the rent, he said he didn't have the money then, but to return later. Q. At that time didn't he tell you he claimed to hold the premises under the Ah Leong agreement at the rate of $125 a month? A. Not to my knowledge. Q. You mean not to your knowledge, or you don't remember? A. I don't remember."

Defendant's own version of his interview with Awana is as follows: (Trans. pp. 17, 18.) "Q. You saw Mr. Awana again on January 2nd? A. Yes, I did. Q. Did he say anything to you about rent? A. Yes. Q. What did he say? A. He told me the rent was $500 a month, and I told him that Ah Leong told me it was $125 a

month. Q. Did you say whether or not you were willing to pay $500 a month for the month of January? A. No, I told him only $125 a month."

On January 10, 1924, defendant's certified check dated January 7 for $125 was sent by registered mail to Chun Yin Kok and was afterwards returned to defendant by Mr. Awana. On January 15, 1924, plaintiff sent defendant the following notice: "As you have failed to pay the rent as demanded in a notice to you dated January 2, 1924, you are hereby notified to immediately deliver up to me the premises now occupied by you on Aala street." (Plaintiff's Exhibit "F".) Defendant continued to occupy the premises until February 1, 1924.

The above recited evidence was sufficient to justify a finding that on January 1, 1924, the defendant began his tenancy of the premises above named for the month of January, under conditions which implied an acceptance of the terms set forth in plaintiff's letter of November 27, 1923. (Plaintiff's Exhibit "B".) Rental at the increased rate was payable in advance and tenancy for the month of January having commenced upon terms theretofore determined by offer and implied acceptance, it was too late on January 2 either for plaintiff to impose further conditions upon defendant's right of occupancy during that month or for defendant, without plaintiff's consent, to withdraw his acceptance of the new terms. "A contract for a different rent has been held to arise when the landlord notifies the tenant that if he holds over he must pay an increased rent and the tenant makes no reply and does hold over, this being regarded as an acceptance of the landlord's proposition." 2 Tiffany, Landlord and Tenant, p. 1490. Defendant quotes the same text writer to the following effect: "If, however, the tenant protests against such increase, there can, by the cases generally, be no implication of assent by him

and no greater rent can be demanded than before." *Id.* p. 1490.

It is unnecessary for us to determine whether the principle last above urged is or is not in force in this jurisdiction. In either event it is not applicable to a protest made after acceptance, express or implied, after occupancy upon the new terms had actually begun and after rent for one month at the new rate had accrued.

The exceptions are overruled.

*Robertson & Castle* for plaintiff.

*Lightfoot & Lightfoot* for defendant.

CONCURRING OPINION OF PERRY, C. J.

The new landlord, on November 27, 1923, gave the tenant written notice that from and after January 1, 1924, the monthly rental of the premises would be $500 instead of $125 as theretofore. The tenant, although protesting, as may be assumed from the evidence, on January 2 and again on January 7, 1924, that the rental should be $125 and not $500, nevertheless failed to vacate the premises and remained in possession thereof throughout the month of January, 1924. The authorities seem to be agreed that when a landlord gives a tenant reasonable notice of an increase in the rental and the tenant without making objection continues in possession, an implication of fact arises that the tenant acquiesces in and agrees to the increased rental; but they are not in accord as to what the legal result is when the tenant, after receiving notice of the increase in rental, objects thereto but nevertheless continues in the occupancy and use of the premises. It is held by some, and Tiffany says (2 Tiffany L. & T. 1490) that the weight of authority is to this effect, that when the tenant makes objection there is no room for an inference of assent to the new terms proposed by the landlord and that, in spite of the fact that the tenant insists on continuing to hold posses-

sion, all that the landlord can recover from the tenant is what the courts shall adjudge to be a reasonable rental and not the amount prescribed by the landlord. The reasoning of these authorities does not appeal to me as sound. I prefer the reasoning of those that hold to the contrary. The land is the property of the landlord and as between him and the tenant who holds merely from month to month it is his to do with as he pleases after the proper termination of the existing tenancy. He may, upon giving reasonable notice or the notice required by any statute on the subject, terminate the tenancy and cause the tenant to vacate or he may, permitting the tenant to continue as such, raise the rental to any figure desired by him,—always upon giving reasonable notice of the change. If he determines upon the latter course it then rests with the tenant either to accept the new terms or to vacate the premises. He must do either the one or the other; and cannot, with or without the aid of the courts, prescribe what he or they may deem to be a proper rental and under the rental so fixed continue in possession against the wish of the landlord. It is immaterial, therefore, whether the tenant in this instance objected on January 2 or on January 7; having remained in possession throughout the month of January, he is liable for the rent as fixed by the landlord. If he did not wish to pay that much rent, he should have vacated the premises.

In *Griffin* v. *Knisely*, 75 Ill. 411, 417, the court, after remarking that it was conceded by the appellant that "if he had held over, after notice of the terms, without objection, he might be held responsible upon the contract", said: "But what difference can his objection make? The property belonged to appellee and he surely might charge for its use what he pleased. If appellant was not willing to accede to his terms, he should have left the property. He had no right to remain in pos-

session against appellee's wishes and force him to accept himself as a tenant, on the same terms that he held the property the preceding year. Notwithstanding his objection to appellee's terms, inasmuch as appellee did not, upon his urging his objections, consent to modify them, his subsequent holding over raises the presumption that he finally concluded to accede to them."

Upon this ground, therefore, and not upon the ground stated in the majority opinion, I think that the verdict in the sum of $500 should be sustained. Upon the other issues considered I concur in the views of the majority.